UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CANTON CLUB EAST PARTNERS
LIMITED DIVIDED HOUSING
ASSOCIATION LIMITED PARTNERSHIP,
a Michigan limited liability company

        Plaintiff,                  Case No. 1:15-CV-505

v.                                       HON. GORDON J. QUIST

MICHIGAN STATE HOUSING
DEVELOPMENT AUTHORITY, et al.,

        Defendants.
_____/

## **OPINION**

Plaintiff, Canton Club East Partners Limited Dividend Housing Association Limited Partnership, is the owner of a property for which it received an allocation of the Low-Income Housing Tax Credit (LIHTC). Properties subsidized by the LIHTC must generally be maintained as affordable housing for 30 years, although an LIHTC recipient may be released from such obligation after 15 years under certain circumstances. Plaintiff sought a release of its obligation to maintain the property as affordable housing after 15 years, but Defendants, the Michigan State Housing Development Authority (MSHDA) and its employees, denied Plaintiff's request.

Plaintiff alleges that Defendants' actions violated the Internal Revenue Code (IRC), and have asserted a claim under 42 U.S.C. § 1983. Defendants have moved to dismiss Plaintiff's complaint, arguing, among other things, that the IRC provision at issue does not create a right that is enforceable under § 1983. For the following reasons, the Court will grant Defendants' motion for failure to state a claim. See Fed. R. Civ. P. 12(b)(6).

***Background***

The LIHTC is a federal program administered by state housing agencies that provides tax credits to developers of low-income housing. *See* 26 U.S.C. § 42. LIHTC properties must generally be maintained as affordable housing for an initial compliance period of 15 years and an additional extended use period of 15 years. *Id.* § 42(h)(6)(D). The owner of an LIHTC property may, however, be excused from compliance during the 15-year extended use period under certain circumstances. *See id.* § 42 (h)(6)(E). Specifically, § 42 of the IRC, which governs the LIHTC program, provides:

> The extended use period for any building shall terminate . . . on the last day of the [one-year period following a request from the LIHTC recipient] if the housing credit agency is unable to present during such period a qualified contract for the acquisition of the lower-income portion of the building by any person who will continue to operate such portion as a qualified low-income building.

*See id.* § 42 (h)(6)(E)(i)(II). In essence, an LIHTC property owner may be excused from compliance after the initial 15-year period if the state housing agency cannot find a purchaser for the property that will continue to operate it as affordable housing.

An LIHTC property owner who seeks to be excused from the extended use period must submit a request, known as a qualified contract request, to the state housing agency. *Id.* § 42 (h)(6)(E). That request must include a calculation of the qualified contract price, which is calculated pursuant to IRS regulations. *Id.* § 42(h)(6)(F). If the housing agency fails to find a buyer to purchase the property at the qualified contract price within one year after the request is submitted, the owner is excused from the extended use period and may rent the units at market rate.

Plaintiff received an LIHTC allocation for a property in Canton Township. On December 28, 2000, Plaintiff and MSHDA entered into a Regulatory Agreement that outlined the terms of Plaintiff's obligations as an LIHTC recipient. (Dkt. #17-1.) The Regulatory Agreement stated that Plaintiff agreed to maintain the building as affordable housing during the initial 15-year compliance

2

period and the 15-year extended use period in accordance with IRC § 42 (h)(6)(E). (*Id.* at Page ID#432.) It further provided that the agreement was "enforceable in the courts of the State of Michigan." (*Id.* at Page ID#433.)

On February 20, 2014, Plaintiff submitted a qualified contract request to MSHDA. (Dkt. #17-3.) The request included an attached report that calculated the qualified contract price at $9,779,458. (*Id.* at Page ID#469.) In response, MSHDA sent Plaintiff a letter stating that the one-year period to find a buyer commenced on February 20, 2014, and that the qualified contract price was $9,700,000. (Dkt. #17-4.) On February 19, 2015—the day before the one-year period was set to expire—MSHDA sent Plaintiff an agreement for purchase of the property for $9,700,000, the amount stated in the letter that MSHDA had sent to Plaintiff. (Dkt. #17-6.) At that point, Plaintiff pointed out to MSHDA that the $9,700,000 contained it its response letter was not the correct qualified contract price. (*Id.*) Plaintiff argued that, because MSHDA had failed to secure a purchaser for the qualified contract price, Plaintiff was excused from compliance (i.e., maintaining the property as low-income housing) during the extended use period. (*Id.*) MSHDA then sought to re-list the property at the correct qualified contract on an expedited basis, but Plaintiff refused. (*Id.*) Shortly thereafter, Plaintiff filed a complaint asserting a claim under 28 U.S.C. § 1983.

*Discussion*

Section 1983 creates a remedy for those denied "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It does not create substantive rights, but "merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 122 S.Ct. 2268, 2276 (2002). In this case, Plaintiff asserts a § 1983 claim based on Defendants' alleged violation of § 42 of the IRC. Defendants argue that because § 42 does not create an enforceable right that may support a cause of action under § 1983, Plaintiff has failed to state a claim.

3

In *Gonzaga*, the Supreme Court explained how to determine whether a right may be enforced through § 1983. 536 U.S. 273, 122 S.Ct. 2268. The first step in such determination, the Court explained, involves an inquiry into "whether Congress *intended to create a federal right*." *Id.* at 283, 122 S. Ct. at 2275 (emphasis in original). The Court went on to reject the idea, adopted by some lower courts, that such inquiry differed from that used to determine whether a statute creates a private right of action. *Id.* Rather, the Court explained,

> [b]oth inquiries simply require a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries. Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.

*Id.* at 285-86, 122 S. Ct. at 2276-77 (internal quotation marks omitted). Thus, the Court concluded, when Congress wants to create new rights enforceable by either § 1983 or an implied right of action, "it must do so in clear and unambiguous terms." *Id.* at 290, 122 S. Ct. at 2279.

As the Sixth Circuit has noted, the Court's decision in *Gonzaga* "altered the landscape of § 1983 claims." *Johnson v. City of Detroit*, 446 F.3d 614, 621 (6th Cir. 2006). Following *Gonzaga*, "statutory language that merely benefits putative plaintiffs without specific rights-creating language is insufficient to confer a personal federal right enforceable under § 1983." *Id.* (internal quotation marks omitted). Rather, "the text and structure of the statute in question must be examined to determine whether Congress intended to create a federal right; such a right must be gleaned from unambiguous, explicit rights-creating language that focuses on rights, not broader or vaguer benefits or interests." *Id.* (internal quotation marks omitted).

Since the decision in *Gonzaga*, the Sixth Circuit has repeatedly rejected attempts to base § 1983 actions on federal statutes. In *Johnson*, the court determined that subsidized housing residents could not maintain a § 1983 action based on a statute requiring the elimination of lead paint. *Id.* at 624-25. The court explained that the statute at issue merely benefitted housing residents, but did

4

not expressly create individual rights. *Id. See also Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 620 (6th Cir. 2005) (holding that the plaintiff could not pursue a § 1983 action based on a federal housing statute because it did not confer an individual right). The Sixth Circuit reached the same conclusion in a different context, holding that parents who were entitled to receive child support payments under the Social Security Act could not maintain a § 1983 action based on violation of the statute because it did not contain the "rights-creating language necessary to create an enforceable individual right." *Hughlett v. Romer-Sensky*, 497 F.3d 557, 563 (6th Cir. 2006)

Although courts in this circuit have not addressed whether § 42 of the IRC creates an enforceable individual right, other courts have held that it does not. *See Mendoza v. Frenchman Hill Apartments Ltd. P'ship*, No. CV-03-494-RHW, 2005 WL 6581642 (E.D. Wash. Jan. 20, 2005); *DeHarder Inv. Corp. v. Indiana Hous. Fin. Auth.*, 909 F. Supp. 606 (S.D. Ind. 1995). In *Mendoza*, the court held that evicted residents of an LIHTC building could not maintain a § 1983 action premised on the violation of a provision in IRC § 42 prohibiting eviction of tenants without good cause. 2005 WL 6581642 at *6-7. The court explained that, like the statue at issue in *Gonzaga*, the LIHTC statute "serves primarily to direct the distribution of government funds rather than to confer rights." *Id.* at *6. Another district court reached the same conclusion in addressing a provision of IRC § 42 concerning allocation of tax credits. *DeHarder*, 909 F. Supp. at 614.

Plaintiff argues that those cases are distinguishable because they addressed different provisions of IRC § 42 rather than the issue at hand. The provision upon which Plaintiff's claim is based provides:

> The extended use period for any building shall terminate . . . on the last day of the [one-year period following the qualified contract request] if the housing credit agency is unable to present during such period a qualified contract for the acquisition of the lower-income portion of the building by any person who will continue to operate such portion as a qualified low-income building.

26 U.S.C. § 42(h)(6)(E)(i)(II). This language does not unambiguously create new rights enforceable by LIHTC recipients, as required by *Gonzaga*, 536 U.S. at 290, 122 S. Ct. at 2279. Although the

5

provision at issue benefits LIHTC recipients, it does not contain the necessary rights-creating language. Moreover, the text and structure of IRC § 42 do not indicate an intention to create new rights. Rather, as the *Mendoza* court noted, IRC § 42 as a whole "serves primarily to direct the distribution of government funds rather than to confer rights." *Mendoza*, 2005 WL 6581642, at *6.

Although Plaintiff may not seek to vindicate its rights under § 1983, it is not without recourse. The Regulatory Agreement between the parties incorporated the statutory provision at issue by specifically stating that Plaintiff must maintain the property "in accordance with Section 42(h)(6)(E) of the [IRC]." Thus, under the agreement between the parties, Plaintiff has to maintain the property as affordable housing unless the exceptions in § 42 of the IRC apply. If Plaintiff believes that it has satisfied its obligations under the contract, it may pursue that claim in state court.

### *Conclusion*

Because § 42 (h)(6)(E) of the IRC does not contain "clear and unambiguous" language indicating an intent to create a new individual right, it may not serve as the basis for a § 1983 claim. *See Gonzaga*, 536 U.S. at 290, 122 S. Ct. at 2279. Accordingly, Plaintiff has failed to state a claim under § 1983, and the Court will dismiss the complaint.

An Order consistent with this Opinion will follow.


Dated: December 3, 2015                              /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE